# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

JAN 25 2019
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VA

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
                                                                  Case No. 1:19-SW- 57
the disclosure of location based services and disclosure )
of stored telecommunications records for telephone )
number (240) 415-9221 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See attachment A

located in the _____ District of ___New Jersey___, there is now concealed *(identify the person or describe the property to be seized)*:
See attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 846 | Illicit trafficking of a controlled substance |

The application is based on these facts:
See the attached affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Julie Whisenhunt, Special Agent - DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/25/19

City and state: Alexandria, Virginia

Theresa Carroll Buchanan
United States Magistrate Judge

*Judge's signature*

The Honorable Theresa Buchanan, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

*Property to Be Searched*

1. The cellular telephone assigned call number (240) 413-9221 (the "Subject Cell Phone"), whose wireless service provider is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054.

2. Information about the location of the Subject Cell Phone that is within the possession, custody or control of T-Mobile.

# ATTACHMENT B

*Particular Things to be Seized*

All information about the location of the Subject Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Subject Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Subject Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division


JAN 25 2019
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A SEARCH WARRANT AND ORDERS PURSUANT TO 18 U.S.C. §§ 2703(c)(1)(A) AND 3122(a)(1) FOR: (1) THE DISCLOSURE OF LOCATION BASED SERVICES; (2) DISCLOSURE OF STORED TELECOMMUNICATIONS RECORDS FOR TELEPHONE NUMBER (240) 413-9221 | (UNDER SEAL)<br><br>No. 1:19-SW- 57 |
|---|---|

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Julie Whisenhunt, Special Agent of the Drug Enforcement Administration (DEA), Washington Division Office (WDO), Washington, D.C., being duly sworn, depose and state the following:

## INTRODUCTION

1. I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I have been a Special Agent of the DEA since January 1997. During my time in law enforcement, I have participated in the application for and execution of numerous arrest and search warrants in the investigation of narcotics and organized crime related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, weapons, stolen property, and other evidence of criminal activity.

2. As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding the acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am

familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled dangerous substances.

3.  Based upon this experience, I have become knowledgeable of the methods and modes of narcotics operations, and the language and patterns of drug abuse and trafficking. During the course of my participation in investigations of narcotics trafficking organizations, I have testified at trial, in grand jury proceedings, and at probable cause and detention hearings. Through my employment with the DEA, I have gained knowledge in the use of various investigative techniques including the utilization of wiretaps, physical surveillance, undercover agents, confidential informants and cooperating witnesses, the controlled purchases of illegal narcotics, electronic surveillance, consensually monitored recordings, investigative interviews, financial investigations, the service of administrative and grand jury subpoenas, and the execution of search and arrest warrants.

4.  I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (240) 413-9221 (hereafter, the "Subject Cell Phone"), whose service provider is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054. The Subject Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

5.  Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846 have been committed, are being committed, and will be committed by JOSE VARGAS, ROGER VINCENT, and others. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these

criminal violations, and will lead to the identification of individuals engaged in the commission of these offenses.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

A. <u>Use of Phones by Drug Traffickers to Further Their Criminal Activity</u>

7. Based on my training, experience, and participation in narcotic and drug-related investigations and the training and experience of other agents with whom I am working on this investigation, I know that:

   a. It is common for individuals engaged in the distribution of controlled substances to use telephonic communications to further their criminal activities by coordinating the distribution of narcotics, illegal proceeds of narcotics trafficking, and other efforts of co-conspirators;

   b. Individuals engaging in the distribution of controlled substances use cellular telephones and cellular telephone technology to communicate and remain in constant contact with customers and the sources of those controlled substances;

   c. Individuals who engage in the distribution of controlled substances use cellular telephones to exchange information with customers and/or source(s) of supply through text and instant messaging in addition to direct telephone conversations.

B.   Facts of Current Investigation

8.   The DEA is investigating a drug trafficking organization (DTO) involved in the transportation and distribution of narcotics and the collection of narcotics proceeds between Los Angeles, California, and various locations on the east coast, including in and around the Eastern District of Virginia. Through call data record analysis, GPS monitoring, surveillance, and information obtained from confidential sources, law enforcement has been able to identify several individuals working for the organization, including JOSE VARGAS, ROGER VINCENT, and others.

9.   In May 2017, DEA agents observed VARGAS engage in a suspected narcotics transaction with VINCENT. On that date, through physical and video surveillance, law enforcement observed VARGAS carry a green backpack to a hotel room at the MGM National Harbor. Investigators then observed VINCENT join VARGAS in the room; depart the room; return with a weighted paper shopping bag; and then depart the room with the green backpack previously carried by VARGAS. Investigators believe VINCENT was sampling VARGAS's narcotics in the hotel room before leaving to retrieve U.S. currency to pay VARGAS for the narcotics. VINCENT then departed the room carrying the green backpack containing narcotics. Through use of a subpoena, law enforcement determined that VINCENT had obtained a "player's card" at the MGM National Harbor casino, providing the telephone number (202) 867-5807 ("Vincent Cell Phone-1").

10.   On or about May 25, 2017, the Honorable Theresa Carroll Buchanan, United States Magistrate Judge, Eastern District of Virginia, signed a warrant authorizing the collection of location-based information for Vincent Cell Phone-1 for a period of 30 days, also known as a "ping". Through use of the location-based information collected pursuant to this warrant, law

enforcement identified a suspected stash house used by VINCENT to store narcotics—an apartment on New York Avenue in Washington, D.C. Investigators obtained a search warrant in the District of Columbia for the stash house, and executed the search in September 2017. Subsequent to the search, agents seized over 100 grams of heroin, cocaine, marijuana, a loaded Glock 19 handgun, a money counter, heat sealers, seven cell phones, miscellaneous papers and documents, and drug packaging material and paraphernalia. Shortly after the search, law enforcement observed VINCENT return to the apartment, and depart abruptly after several minutes. VINCENT discontinued use of the Vincent Cell Phone-1 number shortly thereafter.

11. Since that time, investigators have identified several phone numbers used by VINCENT, including (202) 321-2467 ("Vincent Cell Phone-2"). On or about June 1, 2018, the Honorable Michael S. Nachmanoff, United States Magistrate Judge, Eastern District of Virginia, signed a warrant authorizing the collection of location-based information for Vincent Cell Phone-2 for a period of 30 days, also known as a "ping", and the establishment of a pen register/trap and trace device for a period of 60 days.

12. Through toll analysis of Vincent Cell Phone-2, investigators identified (202) 631-7305 ("Vincent Cell Phone-3"), as an additional number used by VINCENT. Law enforcement determined that this number was in contact with a phone number used by Daisha Wise (VINCENT's girlfriend), and several prepaid phone numbers with California area codes. Law enforcement believes these numbers were likely used by VARGAS and other California-based conspirators.

13. On July 28, 2018, the Honorable John F. Anderson, United States Magistrate Judge, Eastern District of Virginia, signed an order authorizing law enforcement to install and use a pen register/trap and trace device for a period of 60 days on Vincent Cell Phone-3. Agents collected

call data for this number until July 23, 2018—at which time it appears VINCENT discontinued use of this number.

14. Through a common call analysis of phone numbers in contact with Vincent Cell Phone-3, agents identified (202) 631-9397 ("Vincent Cell Phone-4") as the likely replacement for Vincent Cell Phone-3. Vincent Cell Phone-4 was established on July 17, 2018, around the time VINCENT discontinued use of Vincent Cell Phone-3.

15. In August and September 2018, VINCENT and a co-conspirator were in telephonic and in person negotiations with a DEA Cooperating Source ("CS") who, under the direction and supervision of agents, purported him/herself to be a source of supply for cocaine. These negotiations regarding the sale and purchase of multi-kilogram quantities of cocaine, occurred in Prince George's County, Maryland, within the District of Maryland, and in Alexandria, Virginia, within the Eastern District of Virginia.

16. On October 29, 2018, VINCENT met with the CS at a hotel located in Oxon Hill, Maryland. This meeting was consensually recorded and monitored by law enforcement. In the hotel room, the CS showed VINCENT a duffle bag containing five kilograms of cocaine. After examining the cocaine, VINCENT purchased one kilogram for $29,000 USC and received a second kilogram on consignment, with the understanding the VINCENT would return later that evening to pay for the second kilo and obtain the remaining kilos from the CS. After VINCENT exited the hotel room, he was taken into custody. A search of VINCENT resulted in the seizure of the two kilos of cocaine, a pistol holster, $2,463, and a cellular telephone. An inventory search of VINCENT's vehicle, which was located in the hotel parking lot, resulted in the seizure of a loaded 9mm Glock 43 pistol, a loaded assault pistol, and five cellular telephones. And, a search

warrant executed at a residence utilized by VINCENT resulted in the seizure of an additional cellular telephone.

17. On November 21, 2018, the Honorable Theresa Carroll Buchanan, United States Magistrate Judge, Eastern District of Virginia, signed a search warrant authorizing the forensic examination of the seven cell phones seized from VINCENT, his vehicle, and his residence subsequent to VINCENT's arrest. Upon execution of the search warrant and subsequent review of the extracted data, agents learned that the call number assigned to one of the five cellular telephone seized from VINCENT's vehicle (LG GSM 150 Cell Phone) is the call number assigned to Vincent Cell Phone-4 ((202) 631-9397).

18. Further analysis of data extracted from Vincent Cell Phone-4 revealed SMS messages with (240) 825-6861 (listed as "Dg" and hereafter referred to as "Co-Conspirator Cell Phone"). On July 17, 2018, two SMS messages were sent from Vincent Cell Phone-4 to the Co-Conspirator Cell Phone that read, "I'm hit you from this one" and "New too". The response from the Co-Conspirator Cell Phone read, "Bet." Based on training and experience, agents believe VINCENT was advising "Dg" (the user of the Co-Conspirator phone) that VINCENT had a new cell phone number.

19. On July 20, 2018, VINCENT sent a SMS message to "Dg", the user of the Co-Conspirator Cell Phone, that read, "You good". "Dg" replied, "Naw not really the Sole on the shoes ain't right." VINCENT questioned, "Short? Or something else". "Dg" replied, "Something else" and "Ugly". VINCENT asked, "Both?" "Dg" answered, "Yea they same shoes". Based on training and experience, agents believe "Dg" and VINCENT used coded language regarding the poor quality of two kilos of a controlled substance, i.e. heroin or cocaine that "Dg" had received from VINCENT.

7

20. Agents subpoenaed subscriber and call detail records for the Co-Conspirator Cell Phone and noted it was a prepaid T-Mobile cell phone, activated on July 17, 2018, with no subscriber information. Agents noted that the user discontinued use of the Co-Conspirator Cell Phone in mid-December 2018. Further analysis of call detail records for the Co-Conspirator Cell Phone during its period of activation revealed frequent contact with (202) 423-3635 (hereafter referred to as the "Jones Cell Phone"). The Jones Cell Phone was relevant to investigating agents due to its association with the seizure of approximately 500 grams of heroin by the Alexandria Police Department (APD) in Alexandria, Virginia on June 28, 2018. On this date, APD narcotics detectives arrested Eudon BARNARD subsequent to seizing the aforementioned heroin from his vehicle. Through a follow-up investigation, APD narcotics detectives identified Anthony JONES as the suspected source of supply for the heroin and the Jones Cell Phone as the cell phone used by JONES to communicate with BARNARD.

21. After determining that the user of the Co-Conspirator Cell Phone had discontinued use in mid-December 2018, agents conducted common call analysis to attempt to identify the replacement cell phone number. As a result of this analysis, the Subject Cell Phone was identified as the replacement for the Co-Conspirator Cell Phone. Subpoenaed subscriber information revealed the Subject Cell Phone to be a prepaid T-Mobile cell phone, activated on December 17, 2018, with no subscriber information. As previously stated, the user of the Co-Conspirator Cell Phone discontinued use in mid-December 2018. Analysis of call detail records for the Subject Cell Phone from December 17, 2018, to January 10, 2019, revealed approximately 14 common contacts with the Co-Conspirator Cell Phone, to include numerous contacts with the Jones Cell Phone.

22. Based on the aforementioned information, it is your affiant's belief that the user of the Subject Cell Phone was a kilo-level narcotics customer of VINCENT. Furthermore, it is your affiant's belief that the user of the Subject Cell Phone is the source of supply for JONES and other yet to be identified individuals. It is anticipated that, should the Court authorize law enforcement to obtain GPS real-time location based data and install a pen register / trap and trace for the Subject Cell Phone, agents will be able to fully identify the user of the Subject Cell Phone, his "stash" locations, as well as his associates, to include his current source of supply.

23. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

9

24. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the Subject Cell Phone, including by initiating a signal to determine the location of the Subject Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available.

25. Based on my training and experience, I know that T-Mobile can collect cell-site data about the Subject Cell Phone.

## AUTHORIZATION REQUEST

26. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

27. I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Subject Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

28. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Subject Cell Phone outside of daytime hours.

Respectfully submitted,

*Julie Whisenhunt*
Julie Whisenhunt, Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this 25 day of January 2019.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

The Honorable Theresa Carroll Buchanan
United States Magistrate Judge

11

## ATTACHMENT A

*Property to Be Searched*

1. The cellular telephone assigned call number (240) 413-9221 (the "Subject Cell Phone"), whose wireless service provider is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054.

2. Information about the location of the Subject Cell Phone that is within the possession, custody or control of T-Mobile.

# ATTACHMENT B

*Particular Things to be Seized*

All information about the location of the Subject Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Subject Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Subject Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## ATTACHMENT A

*Property to Be Searched*

1.  The cellular telephone assigned call number (240) 413-9221 (the "Subject Cell Phone"), whose wireless service provider is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054.

2.  Information about the location of the Subject Cell Phone that is within the possession, custody or control of T-Mobile.

## ATTACHMENT B

*Particular Things to be Seized*

All information about the location of the Subject Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Subject Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Subject Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).